## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KINGSLEY CHUKWU )
10 Town Commons Court )
Germantown, MD 20874 )
)
          Plaintiff, )
)
      v. )    Civil Action No.:
)
AMERICAN UNIVERSITY )
4400 Massachusetts Avenue NW )
Washington, DC 20016 )
)
          Defendant. )
)
)

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1446(a) and (b), Defendant American University hereby gives notice of removal of the above-titled action from the Superior Court for the District of Columbia to this Court and in support thereof state:

1.     The Complaint for Damages and Injunctive Relief ("Complaint") filed in the Superior Court for the District of Columbia (07-CA-001994 B) was served on Defendant on March 15, 2007. Pursuant to 28 U.S.C. § 1446(a) a copy of the Complaint is attached hereto as Exhibit A.

2.     On March 19, 2007, the Superior Court entered an Initial Order and Addendum and on June 22, 2007, the Superior Court entered a Scheduling Order. Pursuant to 28 U.S.C. § 1446(a) a copy of these Orders are attached hereto as Exhibit B and C respectively.

3.     Counsel for Plaintiff received an unsigned draft of the First Amended Complaint for Damages and Injunctive Relief ("Amended Complaint") from counsel for Defendant on August 29, 2007.  On September 5, 2007, Plaintiff filed the Amended Complaint in the Superior Court with an accompanying motion for leave to amend, to which Defendant did not object. Pursuant to 28 U.S.C. § 1446(a) the Amended Complaint is attached hereto as Exhibit D.

4.     In the Complaint, Plaintiff asserts that Defendant violated the D.C. Human Rights Act ("DCHRA"), D.C. Code § 1401.01 *et seq.,* in connection with his termination; retaliated against Plaintiff in violation of the DCHRA, D.C. Code §1402.61 in connection with his termination; failed to pay Plaintiff overtime wages in violation of the D.C. Minimum Wage Act Revision Act of 1992 ("MWRA"), D.C. Code § 32-1003(c); and failed to pay Plaintiff wages in violation of the DC Wage Payment and Wage Collection Law ("WPWCL"), D.C. Code § 32-1302.

5.     In the Amended Complaint, Plaintiff asserts an additional claim of a hostile work environment under the DCHRA.  In addition, Plaintiff asserts that Defendant violated Plaintiff's rights under Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§2601 *et seq.,* in connection with his termination.

6.     Plaintiff's FMLA claim involves a federal question.  The Court has original jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331.

7.     Plaintiff's DCHRA, MWRA, and WPWCL claims form part of the same case or controversy as the FMLA claim and, therefore, the Court has supplemental jurisdiction over these causes of action pursuant to 28 U.S.C. § 1367(a).

400638141v1

8.      Accordingly, this case is removable pursuant to 28 U.S.C. § 1441(a) and (c) and 28 U.S.C. § 1446(b).

9.      Pursuant to 28 U.S.C. § 1446(d), Defendant will (a) give written notice to Kingsley Chukwu that the above-titled action has been removed to this Court and (b) will file a copy of this Notice of Removal with the Clerk of the Superior Court for the District of Columbia.

WHEREFORE, Defendant hereby gives notice that the above-titled action now pending against it in the Superior Court for the District of Columbia is removed to this Court.

DATED:      September 12, 2007

Christine N. Kearns (D.C. Bar No. 416339)
Rebecca M. Carr (D.C. Bar No. 488274)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, DC 20037-1122
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
christine.kearns@pillsburylaw.com
rebecca.carr@pillsburylaw.com

*Counsel for Defendant*
*American University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2007, the foregoing "Notice of Removal" was served by first-class, postage prepaid, U.S. mail, on the following counsel of record:

> Philip B. Zipin
> Nancy S. Brewer
> The Zipin Law Firm, LLC
> 8403 Colesville Road
> Suite 610
> Silver Spring, MD 20910

Rebecca M. Carr

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| Kingsley Chukwu |
|---|

*Plaintiff*

vs.

| American University |
|---|

*Defendant*

Civil Action No. 0001994-07

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Philip B. Zipin |
|---|

Name of Plaintiff's Attorney

| 8403 Colesville Road Suite #610 |
|---|

Address

| Silver Spring, MD 20910 |
|---|

| 301 587-9373 |
|---|

Telephone

By _____

Deputy Clerk

Date _____ MAR 1 5 2007

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

KINGSLEY CHUKWU                                      *
10 Town Commons Court
Germantown, MD 20874                                 *

                Plaintiff                            *

        v.                                                      Case No.:

AMERICAN UNIVERSITY                                  *           0001994-07
4400 Massachusetts Avenue NW
Washington, DC 20016

Serve: Mary Kennard
Office of General Counsel
4400 Massachusetts Avenue NW
Washington, DC 20016                                 *

                                                     *

                Defendant

        *       *       *       *       *       *       *       *       *       *       *

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Kingsley Chukwu, by and through his attorney, Philip B. Zipin, hereby states the

following:

Defendant, through its employees, faculty, and staff, has subjected Plaintiff to

discriminatory and offensive treatment, culminating in Plaintiff's termination from his

employment with Defendant. This is a complaint for (1) damages and injunctive relief

for employment discrimination based on race, national origin, age, religion, and physical

appearance, in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code

§1401.01 et seq. (2001 ed.); (2) retaliation for pursuit of his right to be free from

unlawful discrimination; (3) unpaid overtime wages in violation of the D.C. Minimum

Wage Act Revision Act of 1992 ("MWRA"), D.C. Code § 32-1003(c); and (4) unpaid

1

wages in violation of the DC Wage Payment and Wage Collection Law ("WPWCL"),

D.C. Code § 32-1302.

## I. JURISDICTION AND PARTIES

1. Jurisdiction of this Court is based on D.C. Code § 11-921.

2. Plaintiff Kingsley Chukwu (herein "Plaintiff") resides in the State of Maryland.

Plaintiff is a black male individual of African descent who is over forty (40) years of age.

In keeping with his Rastafarian religion, Plaintiff's hair is wrapped in thick dreadlocks.

3. Defendant, American University (herein "AU" or "Defendant"), is an

educational institution of higher learning located in the District of Columbia at 4400

Massachusetts Avenue N.W., Washington, DC 20016.  AU is an "employer," a "person,"

and an "individual" within the meaning of the DCHRA.

## II. FACTS

4. Plaintiff was employed by Defendant as Night Shift AV Technician at the

Center for Teaching Excellence/Audio & Video Systems & Services Group (herein

"CTE"), from approximately 1999 through July 7, 2006, when he was terminated by

Defendant.

5. As an AV Technician for AU, Plaintiff's primary employment responsibilities

were training students and faculty to properly handle AV equipment, conducting

troubleshooting tutorials, attending to specialized customer service assignments, and

delivering, setting up and picking up audio, video, projection, public address, and

recording equipment for classes and university-sponsored events.

6. Plaintiff was an engaged and dedicated employee who regularly attended

training sessions in order to hone his skills and master new technologies.  While

maintaining his employment with AU, Plaintiff studied for and received a number of degrees, including a Master's Degree in Philosophy and Education and a Master's Degree in Public Communication. Plaintiff also holds a Master's Degree in Public Health and is currently working towards a Ph.D in Conflict Analysis and Resolution.

7.  During the six (6) years that Plaintiff worked for AU, Plaintiff was treated differently from his co-workers by his supervisors, by AU offices, such as the Office of Public Safety, and by the AU student body. Throughout that period, Plaintiff continued to work for Defendant despite such treatment. Plaintiff's termination was set into motion as follows:

8.  On April 13, 2006, Plaintiff received a "Final Written Warning" from his supervisor, Eric Gordon, which stated that Human Resources and Public Safety had received complaints from women who had allegedly perceived Plaintiff as "coming on" to them and were concerned for their safety. Plaintiff was then banned from taking any weekend work shifts, was restricted greatly in his work hours which would now be designated by his supervisor, was banned from entering student dormitories without manager consent, and was required to attend a harassment training session. Plaintiff protested his innocence of any wrongdoing and against such unwarranted punishment, which, on information and belief, was not imposed on any other AV Technician.

9.  One week later, another supervisor Robert Brownlee, stated to Plaintiff: "You do not fit in anymore." Mr. Brownlee referred to Plaintiff's recent warning and stated that, "Public Safety is watching you." A few days later, Mr. Brownlee reiterated these words and also gave Plaintiff a "Level III Warning," the highest that can be given to an employee, for allegedly going over his allotted cell phone minutes.

3

10. Plaintiff wrote several grievance letters to AU officials to refute his "Final Written Warning," and also to apprise AU of the unfair and discriminatory treatment that he had endured throughout his employment: to John Richardson, the Director of CTE, dated April 17, 2006; to the Office of Equal Employment Opportunity and Employee Relations, dated April 17, 2006; and a second letter to John Richardson, dated May 1, 2006.

11. In his first two letters, Plaintiff described a number incidents throughout his employment at AU when he was written up or even arrested on campus based solely on his race and physical appearance, including: (1) in 2004, being accosted by an AU Police Officer because, while Plaintiff was waiting in his car for a locksmith to fix his door handle which would not close, a student reported him to be a suspicious drunkard; (2) a time in 2002 when he was arrested while he was working on campus in the official capacity of Editor in Chief of the AU Graduate Student Review, after a student reported to public safety that Plaintiff was a prowler in the building; (3) and in 1998, when he was reported as a suspicious black man panhandling and was strip-searched at the AU police station.

12. On each occasion, Plaintiff was never identified by the individual who filed the complaint. He instead merely fit the description of a, "black man with dreadlocks," and was then held and interrogated. In each instance, Plaintiff was eventually able to clarify and resolve the situation, but not without enduring suspicion and arrest, along with the accompanying feelings of embarrassment and aggravation. Plaintiff has never done anything to warrant suspicion of wrongdoing. When Plaintiff notified the Office of Public Safety of these events, he was told by Public Safety not to forget that, "he is a

4

black man and that these are rich white kids."

13. Shortly thereafter, Plaintiff's supervisor, Eric Gordon, stated to Plaintiff that he was well aware of and did not appreciate Plaintiff's letters to Mr. Richardson and the Office of Equal Opportunity and Employee Relations. On more than one occasion, both Mr. Gordon and his supervisor, Mr. Brownlee, informed Plaintiff that he should begin looking for a new job, stating that, given his age and educational achievements, Plaintiff was "over-qualified" for his position.

14. On May 17, 2006, one month after Plaintiff received and responded to the "Final Written Warning," Plaintiff's supervisors placed Plaintiff on a Performance Improvement Plan (PIP). Mr. Gordon alleged that Plaintiff was deficient in a number of respects, including that Plaintiff had not completed his delivery sequences, did not return to the office in a timely manner, and failed to minimize his personal business during work time. Mr. Gordon stated that failure to achieve the expected outcomes of the PIP would result in Plaintiff's termination.

15. The PIP documentation promised that Plaintiff's successful completion of the 8-week probation period would then result in full restoration of Plaintiff's employment status. Plaintiff protested that he had not engaged in the conduct which allegedly led to the PIP. Nevertheless, he began working under the PIP on May 17, 2006. Plaintiff's performance was to be reviewed by his supervisors, with feedback, on a weekly basis, with a final review to be completed on July, 8 2006. The PIP was scheduled to end on July 10, 2006.

16. Following May 17, 2007, each week Plaintiff attempted to contact his supervisors, Mr. Gordon and Mr. Brownlee, by e-mail and telephone in order to receive

5

feedback on his performance. Neither supervisor returned his e-mails or documented his performance. Both, however, verbally acknowledged that Plaintiff was satisfying the PIP requirements. Plaintiff received no written critiques of his work performance in May, June, or July 2006.

17. On July 7, 2006, three days before the PIP was scheduled to end, Plaintiff received a "Letter of Termination." The letter stated that Plaintiff had failed to achieve several of the expected goals stated in the PIP: (1) demonstrating technical competence; (2) successfully scheduling and tracking jobs; (3) spending minimal time on personal business during work hours; and (4) arriving to work regularly and in a timely fashion. Plaintiff disagreed with this assessment of his work performance.

18. One week after his termination, and pursuant to Defendant's administrative grievance remedy, Plaintiff properly and timely filed a formal "Statement of Appeal" with Employee Relations at AU to protest his termination.

19. In this Statement, Plaintiff asserted that, in the two (2) months following imposition of the PIP, Plaintiff met and exceeded the expectations and requirements placed upon him, by demonstrating technical competence, successfully scheduling and tracking jobs, spending minimal time on personal business during work hours, and arriving to work on a regular basis and in a timely fashion.

20. In preparation for the administrative appeal of his termination, Defendant solicited and received letters from more than twenty (20) of his colleagues, peers and professors, who attested to his likeable, caring, friendly, warm, and professional behavior. Illustrative comments and endorsements of Plaintiff and his effective and professional performance as an AV Technician at AU include the following:

6

- "In the seven years that I have had the opportunity to receive service and enjoy conversation with [Plaintiff], I have been delighted with his attentiveness and believe that the AU community has been richer for his contributions."

- "I have known [Plaintiff] for several years…I have always known him to arrive promptly, bringing a positive and joyful attitude to his tasks…I feel a sense of relief when he arrives, for I know he will not leave until the problem is solved."

- "[Plaintiff] has always been an absolute pleasure to work with – friendly, good-spirited, prompt, knowledgeable, and helpful."

- "During the [past 5 years] I have had countless run-ins and interactions with [Plaintiff]. From a professional standpoint, I can assure you that we have never worked with a more competent and helpful person in assisting us in our technical needs…On a personal basis, I have never met a more open individual. In such a campus environment with tremendous diversity of people and cultures, [Plaintiff's] character, knowledge, and friendliness has only further enriched my experience at AU."

21. Plaintiff appeared before an AU Hearing Panel, which considered his termination, on October 19, 2006. Notwithstanding evidence of his successful performance under the PIP, on December 18, 2006 Plaintiff was informed that his appeal was denied, concluding the internal appeal process.

## III. CAUSES OF ACTION

### COUNT I: Race Discrimination Under the DCHRA

22. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-21.

23. The DCHRA prohibits discrimination in employment on the basis of race. D.C. Code § 2-1402.11.

24. Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his race, black. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination from employment.

25. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

26. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT II: National Origin Discrimination Under the DCHRA**

27. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-26.

28. The DCHRA prohibits discrimination in employment on the basis of national origin. D.C. Code § 2-1402.11. Plaintiff is of African decent, having been born in Nigeria.

29. Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his national origin. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

30. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

31. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

9

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

## COUNT III: Age Discrimination Under the DCHRA

32. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-31.

33. The DCHRA prohibits discrimination in employment on the basis of age. D.C. Code § 2-1402.11. Plaintiff, at all times relevant, was over the age of forty (40).

34. Plaintiff was treated differently from similarly-situated younger co-workers because of his age. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

35. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

36. AU's conduct was intentional, malicious, and recklessly indifferent to
Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights
under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and
compensation as that which he enjoyed at the time of termination or, in lieu
thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity,
emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of
life, and other pecuniary and nonpecuniary losses in an amount to be determined
by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at
trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses
incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

### COUNT IV: Religious Discrimination Under the DCHRA

37. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs
1-36.

38. The DCHRA prohibits discrimination in employment on the basis of religion.
D.C. Code § 2-1402.11. Plaintiff's religion is Rastafarian.

39. Throughout his employment at AU, Plaintiff was treated differently from
similarly-situated co-workers because of his religion.  AU's discriminatory treatment

11

culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

40. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

41. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT V: Physical Appearance Discrimination Under the DCHRA**

42. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs

1-41.

43.  The DCHRA prohibits discrimination in employment on the basis of physical appearance. D.C. Code § 2-1402.11. In keeping with his Rastafarian religion, Plaintiff maintains his hair in thick coiled dreadlocks on top of his head.

44.  Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his physical appearance. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

45.  As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

46.  AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A.  Enter judgment in favor of Plaintiff and against Defendant;

B.  Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C.  Award Plaintiff full back pay and benefits and otherwise make him whole;

D.  Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E.  Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

13

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

## COUNT VI: Unlawful Retaliation

47. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-46.

48. As set forth in more detail above, on April 17, 2006 and on May 1, 2006, Plaintiff sent letters to his supervisors and the Office of Equal Employment, protesting against unfair employment actions taken against him and seeking to protect his reputation.

49. Instead of working to help Plaintiff in response to his grievance letters, AU's offices and employees placed Plaintiff on a PIP, did not document his successful performance under the PIP as they were instructed to do, and then terminated Plaintiff prior to the completion of the PIP period, without proper cause or justification and notwithstanding successful performance under the PIP.

50. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

51. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

14

A.  Enter judgment in favor of Plaintiff and against Defendant;

B.  Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C.  Award Plaintiff full back pay and benefits and otherwise make him whole;

D.  Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E.  Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F.  Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G.  Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H.  Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT VII: Violation of the DC Wage Payment and Wage Collection Law**

52.  Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-51.

53.  Plaintiff was an "employee," and Defendant was his "employer" within the meaning of the WPWCL.  Under the WPWCL, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff all wages earned by Plaintiff.

54.  Between January 2006 and July 7, 2006, Plaintiff was shorted one half hour per day on his regular shift.  Plaintiff's official employment hours were from 4:30 PM to midnight, a total of 37.5 hours per week. However, as his paychecks reflect, he was paid only for 35 hours per week.

**WHEREFORE**, Plaintiff prays that he be awarded judgment on Count VII of his

15

Complaint against Defendant for unpaid wages under the WPWCL in such amount as is proved at trial. In addition, Plaintiff seeks liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

### COUNT VIII: Violation of the D.C. Minimum Wage Act Revision Act (Overtime)

55. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-54.

56. Plaintiff was an "employee," and Defendant was his "employer" within the meaning of the MWRA. Under the MWRA, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff overtime wages at the rate of 1 ½ times his "regular rate" for work performed beyond forty (40) hours in a given workweek.

57. Plaintiff worked over forty hours per week on two occasions for which he was not compensated at the overtime rate: In February of 2006, on the nights of the Super Bowl and the Academy Awards, Plaintiff worked well into the morning in order to fulfill delicate technical AV broadcast requirements needed by the AU student community. Defendant was not compensated for the overtime worked in these weeks. Defendant owes Plaintiff overtime premium pay under the MWRA.

**WHEREFORE**, Plaintiff prays that he be awarded judgment on Count VIII of his Complaint against Defendant, for unpaid overtime wages under the MWRA, in an amount as is proved at trial. In addition, Plaintiff seeks liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Philip B. Zipin, Esq. Bar #367362
pzipin@zipinlaw.com
8403 Colesville Road
Suite 610
Silver Spring, MD 20910
(301) 587-9373

Counsel for Plaintiff

17

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

KINGSLEY CHUKWU
    Vs.                                    C.A. No.      2007 CA 001994 B
AMERICAN UNIVERSITY

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GERALD I FISHER
Date:  March 19, 2007
Initial Conference: 9:30 am, Friday, June 22, 2007
Location:   Courtroom 519
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001

Caio.doc

**ADDENDUM TO INITIAL ORDER AFFECTING
ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. This information is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc



# *Superior Court of the District of Columbia*
Civil Division -- Washington, D.C. 20001
### SCHEDULING ORDER

Case Number: <u>**2007 CA 001994 B**</u>

<u>KINGSLEY CHUKWU Vs. AMERICAN UNIVERSITY</u>

This ORDER may not be modified except by leave of Court upon a showing of good cause; stipulations between counsel shall not be effective to change any deadlines in the order absent court approval. Failure to comply with all terms may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, the assessment of costs and expenses, including attorney's fees, or other sanctions.

*Gerald I. Fisher*

June 22, 2007
Date:                                                        JUDGE GERALD I FISHER

ADR Selected:  Mediation ☒      Case Evaluation ☐

### Track 2 - Mediation

| | |
|---|---|
| **DEADLINE FOR DISCOVERY REQUESTS** | 08/21/2007 |
| **EXCHANGE WITNESS LISTS** | 08/21/2007 |
| **PROPONENT'S RULE 26(B) (4) STATEMENT** | 08/21/2007 |
| **OPPONENT'S RULE 26(B) (4) STATEMENT** | 09/20/2007 |
| **DISCOVERY CLOSED** | 10/22/2007 |
| **DEADLINE FOR FILING MOTIONS** | 11/05/2007 |
| **DISPOSITIVE MOTIONS DECIDED** | 12/04/2007 |
| **ADR (MEDIATION/CASE EVALUATION)** | 12/19/2007-02/19/2008 |
| **PRETRIAL** | **(TO BE SET UPON COMPLETION OF ADR)** |

**(A Joint Pretrial Statement is required unless otherwise ordered by the Court.)**

Please check names of parties for accuracy and **verify** your own **name, address and telephone number**; write any correction and initial it. Each attorney and pro se party **MUST INITIAL** to acknowledge receipt of this Order.

<u>PARTY</u>                    <u>NAME  /     ADDRESS     / BAR NUMBER</u>

<u>PLAINTIFF</u>        KINGSLEY CHUKWU 10 TOWN COMMONS COURT  GERMANTOWN  MD 20874
                  PHILLIP B ZIPIN 8403 Colesville ROad Suite# 610  SILVER SPRING  MD 20910     367362

<u>Defendant</u>    AMERICAN UNIVERSITY  4400 MASS AVENUE NW  WASHINGTONDC 20016
                  Mr HISHAM R KHALID    AMERICAN UNIVERSITY 4400 MASSACHUSETTS AVENUE NW
Washington  DC 20016    445494

CASCHORD
6/22/2007

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| KINGSLEY CHUKWU | * | |
| 10 Town Commons Court | | |
| Germantown, MD 20874 | * | |
| | | |
| Plaintiff | * | |
| | | |
| v. | * | Case No.: 0001994-07 |
| | | |
| AMERICAN UNIVERSITY | * | |
| 4400 Massachusetts Avenue NW | | |
| Washington, DC 20016 | * | |
| | | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Kingsley Chukwu, by and through his attorney, Philip B. Zipin, hereby states the following:

Defendant, through its employees, faculty, and staff, has subjected Plaintiff to discriminatory and offensive treatment, culminating in Plaintiff's termination from his employment with Defendant. This is a complaint for (1) damages and injunctive relief for disparate treatment in his employment which was discriminatory based on race, national origin, age, religion, and personal appearance, in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code §1401.01 et seq. (2001 ed.); (2) subjecting Plaintiff to a hostile work environment including pervasive and severe harassment all on the basis of Plaintiff's race, national origin, age, religion, and personal appearance; (3) retaliation for pursuit of his right to be free from unlawful discrimination in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code §1402.61 (2001 ed.); (4) unpaid overtime wages in violation of the D.C. Minimum Wage Act Revision Act of 1992 ("MWRA"),

1

D.C. Code § 32-1003(c); (5) unpaid wages in violation of the DC Wage Payment and Wage Collection Law ("WPWCL"), D.C. Code § 32-1302; and (6) violation of employee rights protected by the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 *et seq.*

## I. JURISDICTION AND PARTIES

1. Jurisdiction of this Court is based on D.C. Code § 11-921.

2. Plaintiff Kingsley Chukwu (herein "Plaintiff") resides in the State of Maryland. Plaintiff is a black male individual of African descent who is over forty (40) years of age. In keeping with his Rastafarian religion, Plaintiff's hair is wrapped in thick dreadlocks.

3. Defendant, American University (herein "AU" or "Defendant"), is an educational institution of higher learning located in the District of Columbia at 4400 Massachusetts Avenue N.W., Washington, DC 20016. AU is an "employer," a "person," and an "individual" within the meaning of the DCHRA.

## II. FACTS

4. Plaintiff was employed by Defendant as Night Shift AV Technician at the Center for Teaching Excellence/Audio & Video Systems & Services Group (herein "CTE"), from approximately 1999 through July 7, 2006, when he was terminated by Defendant.

5. As an AV Technician for AU, Plaintiff's primary employment responsibilities were training students and faculty to properly handle AV equipment, conducting troubleshooting tutorials, attending to specialized customer service assignments, and delivering, setting up and picking up audio, video, projection, public address, and recording equipment for classes and university-sponsored events.

6. Plaintiff was an engaged and dedicated employee who regularly attended

training sessions in order to hone his skills and master new technologies. Plaintiff is enrolled in a PhD program in Education with concentration in conflict analysis and resolution. While maintaining his employment with AU, Plaintiff also studied for and received a Master's Degree in Philosophy and Education and a Master's Degree in Public Communication, and Plaintiff also holds a Master's Degree in Public Health.

7. During the seven and a half years that Plaintiff worked for AU, Plaintiff was treated differently from his co-workers by his supervisors, by AU offices, such as the Office of Public Safety, and by the AU student body, based upon his race, national origin, age, religion, and personal appearance.

8. During the seven and a half years that Plaintiff worked at AU, Plaintiff was also subjected to a hostile work environment including severe and pervasive harassment, all based upon his race, national origin, age, religion, and personal appearance.

9. Through May, 2006, Plaintiff endured hostile and insulting comments from other employees: such as being called "nappy hair" and "Here comes Shibi [Plaintiff's name], the dreadlock Rasta-man." The taunting, which was based upon Plaintiff's race, personal appearance, national origin, and religion took place in front of witness including his supervisors, Eric Gordon and Robert Brown Lee who refused to take remedial action..

10. Throughout his employment, including during his last year, Plaintiff suffered other taunting included allegations directed at Plaintiff that he used drugs: he was called "pothead" or "drowsy eyes happy man" and called a liar when he stated that he did not use drugs. Co-workers also taunted him saying he would be soon be fired, and that he would be fired if he made any errors.

11. Throughout his seven and a half year employment with Defendant, Plaintiff

consistently endured shockingly abusive treatment as follows.  Plaintiff was called a

"nigger" on three occasions by co-worker Tim Cegna, in front of witnesses.  Supervisors

Eric Gordon and Robert Brown Lee laughed and refused to take remedial action when

Plaintiff complained to them, saying only "you will just have to deal with it."  During

Plaintiff's employment, a co-worker, John Charvosi, drew and posted for several weeks a

caricature of an individual with dreadlocks with the word "lazy" written on it. Charvosi

repeatedly pointed to it, telling bystanders, "here is Shibi [Plaintiff's name]."  Plaintiff

again complained to supervisors Gordon and Lee who laughed and refused to act.

12.  Through September, 2006, students threw things at Plaintiff: beer bottles,

underwear, urine, used condoms, and food,  while they yelled "Rasta-man."  Although

Plaintiff complained to supervisors Gordon and Lee as well as Professor Peter Schine,

and officials at Public Safety and the AU Police, Plaintiff's reports of racial harassment

were ignored.

13.  At the AV office where Plaintiff worked, supervisors and staff sometimes

pointed to him, jeering, when rap music lyrics: "bad boy, bad boy, they are coming for

you" was playing in the office.  Supervisors taunted him about his dreadlocks, alleging

that that was where he kept his "fresh stash."

14.  On three occasions in 2004, and twice during June, 2006, Plaintiff went to the

Faculty Staff Assistance Program and spoke with Dale Rampell about the hostile

environment.  He explained that he the hostile events caused him increasing shame and

anguish, but the Faculty Staff Assistance Program took no remedial action.

15.  Throughout his seven and a half year employment with Defendant, Plaintiff

was repeatedly accosted by Defendant's security department, and found soon thereafter to

4

be totally innocent of any inappropriate behavior.  Once Plaintiff was falsely labeled a

suspicious drunkard and accosted while he awaited a locksmith to fix his car door handle;

once while functioning as the Editor in Chief for the AU Graduate Student Review,

Plaintiff  was falsely arrested as a "prowler"; once he was strip-searched and falsely

labeled a "suspicious black man panhandling."   None of the persons who made these

allegations  ever identified Plaintiff as the individual about whom they complained, but

the AU Office of Public Safety continued to target Plaintiff with accusations of

inappropriate behavior.

16.   The hostile and harassing treatment described above was unwelcome,

humiliating and caused Plaintiff extreme distress.  Defendant refused to remedy the

hostile work environment despite Plaintiff's complaints, and Plaintiff endured,

throughout his tenure, discriminatory terms and conditions of employment based upon his

race, national origin, religion, and personal appearance.

17.   Throughout the seven and a half  year period, Plaintiff continued to work for

Defendant despite such treatment.  The disparate treatment and harassment culminated in

an unfair discipline and termination, as follows.

18. Although Plaintiff's record for attendance and punctuality was at least as good

as the records of his co-workers, Defendant repeatedly wrote Plaintiff up and finally

terminated him for alleged tardiness and absence, when upon information and belief, no

time records document such infractions by Plaintiff.

19.  Defendant, upon information and belief without specific records or evidence,

wrote Plaintiff up, and finally terminated him for alleged technical incompetence, and

alleged scheduling and tracking errors, when his performance in that regard was at least

as good as that of his co-workers who were not so disciplined.

20.  Although Plaintiff knew that Defendant's allegations of performance problems were untrue, the job with its benefits, especially his the tuition benefit, was vitally important to him.  Plaintiff had a serious investment in the opportunity which this job gave him to complete his PHD.  Plaintiff was teaching as an adjunct professor at other institutions, and the PHD would make a full time professorship possible.  For that reason Plaintiff accepted the unjustified criticism,  pledging to do his best and to improve.  Defendant nonetheless put Plaintiff's discriminatory termination in motion as follows.

21.  On April 13, 2006, Plaintiff received a "Final Written Warning" from his supervisor, Eric Gordon, which stated that Human Resources and Public Safety had received a complaint in March, 2006 from a woman who perceived Plaintiff as "coming on" to her.  Plaintiff has to this day never been told what he specifically was alleged to have done, or to whom, but an investigation soon found the allegations to be baseless.

22.  After April 13, 2006, nonetheless, Plaintiff was permanently banned from taking any weekend work shifts, was restricted greatly in his work hours which would now be designated by his supervisor, was banned from entering student dormitories without manager consent, and was required to attend a harassment training session.  Such unwarranted punishment, was, on information and belief, never  imposed on any of Plaintiff's colleagues.

23.  On Tuesday, April 25, 2006, supervisor Lee gave Plaintiff a letter writing him up for arriving at work late on that Tuesday, and on the previous Tuesday, April 18, 2006.  Plaintiff however was entitled to arrive late on Tuesdays because he had FMLA intermittent leave for medical treatment for that time.  When Plaintiff protested,

supervisor Lee told Plaintiff to "cut his dreadlocks" to avoid the repeated investigations by Public Safety.

24. Plaintiff wrote several grievance letters to AU officials to refute his "Final Written Warning," and also to apprise AU again of the unfair and discriminatory treatment that he had endured throughout his employment: to a second line supervisor, John Richardson, who was the Director of CTE, dated April 17, 2006; to the Office of Equal Employment Opportunity and Employee Relations, dated April 17, 2006; and a second letter to John Richardson, dated May 1, 2006.

25. In his first two letters, Plaintiff described the incidents where he was harassed, targeted, written up and even arrested based solely on his race, national origin, religion, and personal appearance.

26. Shortly thereafter, Plaintiff's supervisor, Eric Gordon, stated to Plaintiff that he was well aware of and did not appreciate Plaintiff's letters to Mr. Richardson and the Office of Equal Opportunity and Employee Relations. On more than one occasion, both Mr. Gordon and his supervisor, Mr. Brownlee, informed Plaintiff that he should begin looking for a new job, stating that, given his age and educational achievements, Plaintiff was "over-qualified" for his position.

27. On May 17, 2006, Plaintiff's supervisors placed Plaintiff on a Performance Improvement Plan (PIP). Mr. Gordon alleged that Plaintiff was deficient in a number of respects, including that Plaintiff had not completed his delivery sequences, did not return to the office in a timely manner, and failed to minimize his personal business during work time. Mr. Gordon stated that failure to achieve the expected outcomes of the PIP would result in Plaintiff's termination.

28. On May 17, 2006, Plaintiff questioned supervisor Eric Gordon about the PIP. Gordon replied that he knew Plaintiff had been contacting Director John Richardson about the April 13, 2006 write-up. Gordon said he had "no sympathy for outside accusations" and that the PIP would be a "good paper trial." Supervisor Lee stated that "[Plaintiff] did not fit in any more," and that "Public Safety has been watching you, and it is time for us to put a paper trial on [Plaintiff] and protect my job and Eric's job."

29. The PIP documentation promised that Plaintiff's successful completion of the 8-week probation period would result in full restoration of Plaintiff's employment status. Plaintiff protested that he had not engaged in the conduct which allegedly led to the PIP. Nevertheless, he began working under the PIP on May 17, 2006. Plaintiff's performance was to be reviewed by his supervisors, with feedback, on a weekly basis, with a final review to be completed on July, 8 2006. The PIP was scheduled to end on July 10, 2006.

30. In the period between April, 2006, and Plaintiff's termination, Plaintiff documented each and every night, in an email to his supervisors, a full description of his full day's activities, reporting on his of his responsibilities, and seeking feedback. Neither Gordon nor Lee would respond in writing, but both supervisors repeatedly stated verbally that Plaintiff was doing fine, was fulfilling the PIP requirements, and had nothing to worry about. Supervisor Lee stated that Plaintiff would not lose his job over "some easy, basic and simple AV jobs that he had been doing for over seven years." Plaintiff received no written critiques of his work performance in May, June, or July 2006.

31. During the PIP period, Plaintiff also attempted to speak with officials at Human Relations, seeking guidance on his progress and outlook for the future, but they

would never speak with him.

32.  During Plaintiff's employment with Defendant, many employees used the cell phones which were given to them, compiling minutes beyond the allotment allowed. This was permitted by Defendant, as long as the employee paid for the minutes.  In April, 2006, Plaintiff used his cell phone in excess of the allotment, and as usual paid for them. Nonetheless, on June 12, 2006 supervisor Lee gave Plaintiff a Level III Final Warning for cell phone use the previous April.  This discipline virtually insured that Plaintiff would be terminated.

33..  On July 7, 2006, three days before the PIP was scheduled to end, Plaintiff received a "Letter of Termination."  The letter stated that Plaintiff had failed to achieve several of the expected goals stated in the PIP: (1) demonstrating technical competence; (2) successfully scheduling and tracking jobs; (3) spending minimal time on personal business during work hours; and (4) arriving to work regularly and in a timely fashion. Plaintiff disagreed with this assessment of his work performance.

34.  One week after his termination, and pursuant to Defendant's administrative grievance remedy, Plaintiff properly and timely filed a formal "Statement of Appeal" with Employee Relations at AU to protest his termination.

35.  In this Statement, Plaintiff asserted that, in the two (2) months following imposition of the PIP, Plaintiff met and exceeded the expectations and requirements placed upon him, by demonstrating technical competence, successfully scheduling and tracking jobs, spending minimal time on personal business during work hours, and arriving to work on a regular basis and in a timely fashion.

36.  In preparation for the administrative appeal of his termination, Defendant

solicited and received letters from more than twenty (20) of his colleagues, peers and

professors, who attested to his likeable, caring, friendly, warm, and professional

behavior.  Illustrative comments and endorsements of Plaintiff and his effective and

professional performance as an AV Technician at AU include the following:

- "In the seven years that I have had the opportunity to receive service and

   enjoy conversation with [Plaintiff], I have been delighted with his

   attentiveness and believe that the AU community has been richer for his

   contributions."

- "I have known [Plaintiff] for several years…I have always known him to

   arrive promptly, bringing a positive and joyful attitude to his tasks…I feel

   a sense of relief when he arrives, for I know he will not leave until the

   problem is solved."

- "[Plaintiff] has always been an absolute pleasure to work with – friendly,

   good-spirited, prompt, knowledgeable, and helpful."

- "During the [past 5 years] I have had countless run-ins and interactions

   with [Plaintiff].  From a professional standpoint, I can assure you that we

   have never worked with a more competent and helpful person in assisting

   us in our technical needs…On a personal basis, I have never met a more

   open individual. In such a campus environment with tremendous diversity

   of people and cultures, [Plaintiff's] character, knowledge, and friendliness

   has only further enriched my experience at AU."

37. Plaintiff appeared before an AU Hearing Panel, which considered his

termination, on October 19, 2006.  Notwithstanding evidence of his successful

performance under the PIP, on December 18, 2006 Plaintiff was informed that his appeal was denied, concluding the internal appeal process.

38. Although Defendant has relied upon Plaintiff's alleged attendance record to justify the termination, Defendant has not produced time records showing unexcused absence.

39. On February 13, 2006, Plaintiff was granted intermittent FMLA - protected leave to obtain physical therapy treatment, for six hours per week, so that he could report for work later than usual on Tuesdays and Fridays.

40. Upon information and belief, Defendant's allegations of attendance problems include discipline for absence which was FMLA protected.

### III. CAUSES OF ACTION

### COUNT I: Race Discrimination Under the DCHRA

41. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

42. The DCHRA prohibits discrimination in employment on the basis of race. D.C. Code § 2-1402.11.

43. Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his race, black. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination from employment.

44. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience,

11

mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

45.  AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A.  Enter judgment in favor of Plaintiff and against Defendant;

B.  Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C.  Award Plaintiff full back pay and benefits and otherwise make him whole;

D.  Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E.  Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F.  Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G.  Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H.  Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT II: National Origin Discrimination Under the DCHRA**

46.  Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

47. The DCHRA prohibits discrimination in employment on the basis of national origin.  D.C. Code § 2-1402.11.  Plaintiff is of African decent, having been born in Nigeria.

48.  Throughout his employment at AU, Plaintiff was treated differently from

12

similarly-situated co-workers because of his national origin. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

49. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

50. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

### COUNT III: Age Discrimination Under the DCHRA

51. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

52. The DCHRA prohibits discrimination in employment on the basis of age. D.C. Code § 2-1402.11. Plaintiff, at all times relevant, was over the age of forty (40).

53. Plaintiff was treated differently from similarly-situated younger co-workers because of his age. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

54. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

55. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

14

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT IV: Religious Discrimination Under the DCHRA**

56. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

57. The DCHRA prohibits discrimination in employment on the basis of religion. D.C. Code § 2-1402.11. Plaintiff's religion is Rastafarian.

58. Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his religion. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

59. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

60. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and

compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT V: Personal Appearance Discrimination Under the DCHRA**

61. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

62. The DCHRA prohibits discrimination in employment on the basis of personal appearance. D.C. Code § 2-1402.11. In keeping with his Rastafarian religion, Plaintiff maintains his hair in thick coiled dreadlocks on top of his head.

63. Throughout his employment at AU, Plaintiff was treated differently from similarly-situated co-workers because of his physical appearance. AU's discriminatory treatment culminated in the unwarranted imposition of a PIP and Plaintiff's unjustified and wrongful termination.

64. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

65. AU's conduct was intentional, malicious, and recklessly indifferent to

16

Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A.  Enter judgment in favor of Plaintiff and against Defendant;

B.  Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C.  Award Plaintiff full back pay and benefits and otherwise make him whole;

D.  Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E.  Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F.  Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G.  Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H.  Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

**COUNT VI:   Hostile Work Environment Based upon Race, National Origin, Religion and Personal Appearance under the DCHRA**

66.  Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

67.  The DCHRA prohibits discriminatory terms and conditions of employment such that an employee is subjected to harassment and a hostile work environment based upon his race, national origin, religion, or personal appearance.  D.C. Code § 2-1401.01 *et seq.*

68.  Defendant refused to eliminate the harassment and refused to remedy the

17

hostile work environment which culminated in Plaintiff's discriminatory termination.

69. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

70. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE**, Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F. Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

### COUNT VII:Unlawful Retaliation

71. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

72. As set forth in more detail above, on April 17, 2006 and on May 1, 2006, Plaintiff sent letters to his supervisors and the Office of Equal Employment, protesting against unfair employment actions taken against him and seeking to protect his reputation.

73. Instead of working to help Plaintiff in response to his grievance letters, AU's offices and employees placed Plaintiff on a PIP, did not document his successful performance under the PIP as they were instructed to do, and then terminated Plaintiff prior to the completion of the PIP period, without proper cause or justification and notwithstanding successful performance under the PIP, and in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code §1402.61 (2001 ed.).

74. As the direct and proximate result of AU's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not necessarily limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses.

75. AU's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's protected statutory rights.

**WHEREFORE,** Plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that the Defendant's actions and omissions violated Plaintiff's rights under the District of Columbia Human Rights Act;

C. Award Plaintiff full back pay and benefits and otherwise make him whole;

D. Declare Plaintiff to be reinstated to a position equal in importance and compensation as that which he enjoyed at the time of termination or, in lieu thereof, award him front pay;

E. Award Plaintiff compensatory damages for his lost earning capacity,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury at trial;

F.  Award Plaintiff punitive damages in an amount to be determined by the jury at trial;

G. Award Plaintiff his reasonable attorneys' fees and all costs and expenses incurred in connection with this action; and

H. Grant Plaintiff appropriate, additional or alternative relief as is just and proper.

### COUNT VIII: Violation of the DC Wage Payment and Wage Collection Law

76. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

77.  Plaintiff was an "employee," and Defendant was his "employer" within the meaning of the WPWCL.  Under the WPWCL, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff all wages earned by Plaintiff.

78.  Between January 2006 and July 7, 2006, Plaintiff was shorted one half hour per day on his regular shift.  Plaintiff's official employment hours were from 4:30 PM to midnight, a total of 37.5 hours per week. However, as his paychecks reflect, he was paid only for 35 hours per week.

**WHEREFORE**, Plaintiff prays that he be awarded judgment on Count VIII of his Complaint against Defendant for unpaid wages under the WPWCL in such amount as is proved at trial.  In addition, Plaintiff seeks liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

### COUNT IX: Violation of the D.C. Minimum Wage Act Revision Act (Overtime)

79.  Plaintiff re-alleges and incorporates by reference the allegations in paragraphs

1-40.

80. Plaintiff was an "employee," and Defendant was his "employer" within the meaning of the MWRA. Under the MWRA, Defendant, as Plaintiff's employer, was obligated to pay Plaintiff overtime wages at the rate of 1 ½ times his "regular rate" for work performed beyond forty (40) hours in a given workweek.

81. Plaintiff worked over forty hours per week on two occasions for which he was not compensated at the overtime rate: In February of 2006, on the nights of the Super Bowl and the Academy Awards, Plaintiff worked well into the morning in order to fulfill delicate technical AV broadcast requirements needed by the AU student community. Defendant was not compensated for the overtime worked in these weeks. Defendant owes Plaintiff overtime premium pay under the MWRA.

**WHEREFORE,** Plaintiff prays that he be awarded judgment on Count IX of his Complaint against Defendant, for unpaid overtime wages under the MWRA, in an amount as is proved at trial. In addition, Plaintiff seeks liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

### COUNT X: Discipline and Termination Based upon FMLA Protected Absence

82. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-40.

83. Plaintiff alleges that Defendant terminated Plaintiff for absence which was FMLA – protected and Defendant's termination of Plaintiff violates the laws of the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 *et seq.* justifying an award of back pay, interest, liquidated damages and attorney fees.

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/ Nancy Brewer_____
Nancy Brewer, Esq. Bar # 484917
Philip B. Zipin, Esq. Bar #367362
pzipin@zipinlaw.com
nbrewer@zipinlaw.com
8403 Colesville Road
Suite 610
Silver Spring, MD 20910
(301) 587-9373

Counsel for Plaintiff

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

KINGSLEY CHUKWU                          *
10 Town Commons Court
Germantown, MD 20874                     *

        Plaintiff                     *


      v.                                 *    Case No.: 0001994-07


AMERICAN UNIVERSITY                      *
4400 Massachusetts Avenue NW
Washington, DC 20016                     *

        Defendant                      *

  *    *    *    *    *    *    *    *    *    *    *

## <u>ORDER</u>

Plaintiffs having moved this Court for leave to file their First Amended Complaint

for Damages and Injunctive Relief, and the Court having considered the Motion and any

opposition, and finding the relief requested should be had:

It is therefore ORDERED that Plaintiff's First Amended Complaint for Damages

and Injunctive Relief is duly filed.


                                _____
                                Judge, Superior Court for the District of
                                Columbia

Serve the following electronically:
Rebecca Carr, Hisham Khalib, Christine Kearns, Philip Zipin, Hon. Gerald Ford

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Kingsley Chukwu | American University |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Phillip B. Zipin and Nancy S. Brewer<br>The Zipin Law Firm, LLC<br>8403 Colesville Road<br>Suite 610<br>Silver Spring, Maryland 20910 | Christine N. Kearns and Rebecca M. Carr<br>Pillsbury Winthrop Shaw Pittman<br>2300 N. Street, N.W.<br>Washington, DC 20037 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☑ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original
Proceeding
◉ 2 Removed
from State
Court
○ 3 Remanded from
Appellate Court
○ 4 Reinstated
or Reopened
○ 5 Transferred from
another district
(specify)
○ 6 Multi district
Litigation
○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. 1441(a) and (c). Removal from Superior Court for the District of Columbia based on federal question jurisdiction pursuant to 28 U.S.C. 1331.

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS
ACTION UNDER F.R.C.P. 23
DEMAND $ [_____]
Check YES only if demanded in complain
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**
(See instruction)
YES ☐ NO ☒
If yes, please complete related case form.

DATE 9/12/2007   SIGNATURE OF ATTORNEY OF RECORD *Pelican*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.